United States District Court
Southern District of Texas
**ENTERED**
November 27, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BANCO MERCANTIL DE NORTE, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE, and ARRENDADORA Y FACTOR BANORTE, S.A. DE C.V., SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, GRUPO FINANCIERO BANORTE** | § | |
| **Petitioners,** | § | **Misc. Action No. 4:23-MC-01188** |
| **v.** | § | |
| **JUAN JOSE PÁRAMO,** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Respondent Juan Jose Páramo's Superseding Motion to Quash § 1782 Application. (Dkt. No. 59). After considering the relevant filings, the record, the applicable law, and the arguments of counsel at a hearing, the Court **DENIES** the Motion.

## I. BACKGROUND

Over a year ago, two Mexican entities came to this Court to obtain discovery from three individuals for use in ongoing default-loan proceedings in Mexico. (*See* Dkt. No. 1). Those entities include Banco Mercantil del Norte, S.A., Institución de Banca Múltiple, Grupo Financiero Banorte and Arrendadora y Factor Banorte, S.A. de C.V., Sociedad

Financiera de Objeto Múltiple, Grupo Financiero Banorte (collectively, the "Banorte Parties"). (*Id.*). And the relevant individual here is Juan Jose Páramo ("Páramo"). (*Id.*).

To obtain discovery from Páramo, the Banorte Parties filed an application under 28 U.S.C. § 1782. (*Id.*). After considering the *Intel* factors,[1] the Court granted the application. (Dkt. No. 5).

Three months later, the Banorte Parties served a subpoena on Páramo requesting six categories of documents:

> 1) Any and all documents exchanged between You on the one hand, and Cartograf or Cartwood, or their representatives or employees, on the other hand, including any communications, invoices, or payments.
>
> 2) Any and all documents exchanged between You and any customer, client, vendor, creditor, or debtor of Cartograf or Cartwood, including any communications, invoices, or payments.
>
> 3) Any and all documents exchanged between You and the Related Entities, or their representatives or employees, including any communications, invoices, or payments.
>
> 4) Any and all documents relating to transfers of money to or from You, either to or from Cartograf or Cartwood.
>
> 5) Copies of Your tax returns.
>
> 6) Any and all documents relating to Your bank accounts and assets.

(Dkt. No. 16 at 9–10).

After a few weeks, Páramo moved to quash that subpoena, arguing that the *Intel* factors weighed in favor of denying the requested discovery. (Dkt. No. 17 at 11–15). The Banorte Parties argued to the contrary. (Dkt. No. 18 at 6–12). Having been presented

[1] As detailed below, *see infra* Section III.B, the "*Intel* factors" are four discretionary factors a court must consider before ordering discovery under 28 U.S.C. § 1782(a).

with both sides of the *Intel* argument, the Court ultimately denied the motion to quash. (Dkt. No. 19). The Court's order read as follows:

> Pending before the Court is Respondent Juan Jose Páramo's Motion Opposing § 1782 Application and Motion to Quash Banorte Subpoena. (Dkt. No. 17). After reviewing the Motion, the Response, the record and the applicable law, the Court is of the opinion that it should be **DENIED**.

(*Id.*).

After Páramo had already begun complying with the subpoena—and almost a month after the Court's order denying the motion to quash—Páramo appealed. (Dkt. No. 20). On appeal, Páramo mainly argued that this Court erred by failing to address the *Intel* factors in the order denying the motion to quash. Brief for Defendant-Appellant, Juan Jose Páramo at 9–10, 20–22, *Banco Mercantil de Norte, S.A. v. Páramo*, 114 F.4th 757 (5th Cir. 2024) (No. 24-20007), ECF No. 15-2, 2024 WL 1219995, at *9, *19–22. The Fifth Circuit agreed and vacated this Court's order and remanded for more detailed findings. *See Banco Mercantil de Norte, S.A.*, 114 F.4th at 762.

In light of the Fifth Circuit's remand, the Court instructed Páramo to file any reply brief by 5:00 p.m. on September 2, 2024. Páramo instead filed a superseding motion to quash. (Dkt. No. 59). There, Páramo alleged that the Banorte Parties had served Páramo with a state-court petition and thus could no longer show that the requested discovery was "for use" in foreign litigation as required by Section 1782. (*Id.* at 1). On September 24, 2024, the Banorte Parties responded to Páramo's Superseding Motion to Quash and provided supporting documents for the Court's review. (Dkt. Nos. 70, 71, 72). Páramo replied. (Dkt. No. 73).

The Court held a hearing on the Motion to Quash on September 5, 2024. (Dkt. No. 64). At the hearing, Páramo's counsel asserted that they did not need to file the reply per this Court's instructions because they were filing a superseding motion to quash. (*Id.* at 23). And while Páramo alleged that the Banorte Parties had provided a *courtesy copy* of the proposed state-court petition, (Dkt. No. 59 at 1), all Parties agreed that the state-court petition had not been filed, (Dkt. No. 64 at 15). Thus, Páramo's counsel conceded that there is no subsequent litigation, only threatened litigation. (*Id.* at 17). At the hearing, the Court also requested more evidence from the Parties to substantiate certain assertions. (*Id.* at 26–27, 63, 73).

Two other things from the September 5 hearing merit attention. First, an exchange between the undersigned and Páramo's counsel, Mr. Dockery:

> **THE COURT:** . . . . Where are the documents at right now, or the information?
>
> **MR. DOCKERY:** Yes.
>
> **THE COURT:** Have you or someone in your office reviewed them?
>
> **MR. DOCKERY:** No, I have not. No.

(*Id.* at 46). And later:

> **THE COURT:** Have you looked at any of [Páramo's] emails?
>
> **MR. DOCKERY:** I have not reviewed his emails.

(*Id.* at 57–58).

Although Páramo was served with the subpoena on October 28, 2023, (*see* Dkt. No. 16 at 4), Páramo's counsel still has not reviewed the subpoenaed documents more than a year later, (*id.* at 46, 57–58). And yet, Páramo's counsel represented in prior filings that:

(1) the requested documents "will not be relevant to [the Banorte Parties'] civil proceedings," (Dkt. No. 17 at 14); (2) the subpoena "encompasses documents unrelated to the request," (Dkt. No. 59 at 15); (3) the documents are in a foreign country, (*id.* at 13–14); (4) the "swath of documents requested" is "ocean-sized," (*id.* at 15); and (5) *all of the documents* are "protected by the Fifth Amendment of the Constitution and Mexican laws against self-incrimination," (*id.* at 16). Given that Páramo's counsel had not reviewed any of the documents before making these representations, it is hard to see how these representations were "formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

Second, at the September 5 hearing, the Court instructed both Parties to present *evidence* supporting their many assertions. (Dkt. No. 64 at 26–27, 63, 73). The Banorte Parties complied, presenting a declaration detailing: (1) Páramo's efforts to hide and dissipate assets, (Dkt. No. 71 at 4–5, 10–11); (2) the freezing orders entered by the Mexican courts against Páramo's assets and the assets of Cartograf—Páramo's cardboard company—and various related entities, (*id.* at 5–7); (3) the relevance of the requested discovery, (*id.* at 7–9); and (4) the admissibility of the requested evidence in the Mexican proceedings, (*id.* at 9–10). The Banorte Parties also attached documents supporting the claims in the declaration and directed the Court to evidence already in the record. (*See* Dkt. Nos. 71-1, 71-2, 71-3, 71-4); (*see also* Dkt. No. 46-1) (showing funds from one of Páramo's companies being used to pay for his home in Texas).

Páramo, meanwhile, failed to present evidence of his assertions, though he carries the burden on this Superseding Motion to Quash. In his Reply, Páramo attached: (1) a

transcript of the September 5 hearing, over which the undersigned presided, (Dkt. No. 73-1 at 2–91); (2) a courtesy copy of a state-court lawsuit that the Banorte Parties did not file, (*id.* at 93–112); and (3) a three-page declaration from a Mexican attorney describing—in general terms—a slew of Mexican-law protections that *might* apply to the requested documents, (*id.* at 114–16).[2]

Notably absent is any evidence (1) substantiating Páramo's claims about the scope of the subpoena; (2) showing what it would cost for Páramo to comply with the subpoena; (3) refuting the Banorte Parties' allegations that Páramo has continued to hide and dissipate assets during this fifteen-month-long discovery dispute; or (4) supporting Páramo's argument that the requested documents are located abroad.

## II. LEGAL STANDARD

Generally, a district court may order a person who resides or is found in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). One way that this happens is that "a foreign or international tribunal" or "any interested person" may request the district court to award such discovery in accordance with the Federal Rules of Civil Procedure. *Id.* Section 1782(a) "aims to provide efficient assistance to parties litigating in foreign tribunals and, by example, to encourage foreign assistance in U.S. Courts." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022).

---

[2] Neither the declarant nor Páramo explains how they apply, and the declarant doesn't even state that they *do* apply. (*See id.* at 114–16).

Section 1782 has three statutory elements: (1) the discovery is sought from an individual located in the district in which the application is filed; (2) the discovery is for use in a legal proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782.

Courts also address four discretionary factors known as the "*Intel* factors." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65, 124 S.Ct. 2466, 2482–84, 159 L.Ed.2d 355 (2004). These factors include: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the "character" of the foreign proceedings, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the request attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is "unduly intrusive or burdensome." *Id.*

## III. DISCUSSION

The Court begins with Páramo's newly asserted argument that the Banorte Parties cannot meet the "for use in a [foreign proceeding]" element of Section 1782, (Dkt. No. 59 at 10–11), before turning to the *Intel* factors. The Court will then address Páramo's other arguments.

### A. STATUTORY FOR-USE ELEMENT

In his Superseding Motion to Quash, Páramo—for the first time—challenges one of the statutory elements under Section 1782. (*See id.*). Páramo argues that the Banorte Parties' threatened state-court litigation shows that the discovery they seek is not "for use" in foreign litigation. (*Id.*). The Court disagrees.

In support of his arguments, Páramo cites two cases: (1) *Glock v. Glock, Inc.*, 797 F.3d 1002 (11th Cir. 2015), and (2) *In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017). Páramo cites these cases for the proposition that "[u]nder the 'for use' element, courts can examine whether the named foreign proceeding is a ruse for obtaining information for another purpose." (Dkt. No. 59 at 4).

But that is not what those cases hold. After examining the "statutory text, legislative history, conventional discovery practice, [and] policy considerations," the Eleventh Circuit in *Glock* concluded "that § 1782 does not preclude, as a matter of law, the use of evidence procured pursuant to it in *subsequent* United States civil litigation." 797 F.3d at 1010 (emphasis added). The Second Circuit in *In re Accent Delight* similarly held: "In sum, we hold that Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." 869 F.3d at 135.

The Eleventh and Second Circuits recognized that courts may consider evidence of an applicant's attempts to use Section 1782 as an end-run around the normal discovery process. *Glock*, 797 F.3d at 1009; *In re Accent Delight*, 869 F.3d at 135. But both courts framed that inquiry as part of the third factor of the discretionary *Intel* analysis, not as part of the statutory for-use element. *Glock*, 797 F.3d at 1009; *In re Accent Delight*, 869 F.3d at 135.

Accordingly, in assessing the third *Intel* factor, the Court will give due weight to the state-court petition that the Banorte Parties considered filing (but have not filed) after more than a year of seeking discovery from Páramo and in response to Páramo's (alleged)

efforts to hide and dissipate assets—efforts that stand to benefit from Páramo's delay in this proceeding. The unfiled state-court petition does not, however, affect the Court's original finding that the Banorte Parties are requesting discovery "for use" in foreign litigation as required by Section 1782. (Dkt. No. 5 at 2).

### B. THE *INTEL* FACTORS

Now for the *Intel* factors. Páramo has only ever challenged the third and fourth *Intel* factors. (*See* Dkt. No. 59 at 6–9); (Dkt. No. 17 at 11–15); Brief for Defendant-Appellant, Juan Jose Páramo, *supra*, at 8, 2024 WL 1219995, at *7 ("Did the district court abuse its discretion in applying the third and fourth discretionary factors . . . ?"). So the Court will only briefly address the first two factors. In the end, however, the Court finds that all four *Intel* factors favor denying Páramo's Superseding Motion to Quash.

#### 1. Páramo is a nonparticipant in the Mexican proceedings

To start, Páramo's nonparticipation in the Mexican proceeding cuts against him. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264, 124 S.Ct. at 2483. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* As a result, "[i]f a party qualifies as a nonparticipant, this factor generally weighs in favor of granting the requested discovery, whereas a party's status as a participant in a foreign

proceeding" cuts against granting discovery under Section 1782. *In re Application of Banco Mercantil De Norte, S.A.*, No. 3:23-MC-00008, 2023 WL 6690708, at *6 (E.D. Va. Oct. 12, 2023).

Although Páramo is nominally a party to the Mexican Proceedings, (Dkt. No. 1 at 12), he is not a "participant," *Intel Corp.*, 542 U.S. at 264, 124 S.Ct. at 2483. The Banorte Parties have not served Páramo with process in the Mexican litigation or obtained any information from him in connection with the litigation because he left Mexico in the summer of 2021. (Dkt. No. 71 at 8). And Páramo remains outside the reach of Mexican courts. (*Id.*). As a result, the Mexican court cannot effectively exercise power over Páramo to make him produce discovery. This factor weighs in favor of denying the Superseding Motion to Quash.

**2. <u>Mexican courts are receptive to foreign assistance</u>**

The second *Intel* factor also favors denying Páramo's Superseding Motion to Quash because Mexican courts are receptive to foreign assistance. Federal courts have repeatedly concluded that there is no authoritative evidence that Mexican courts are hostile to the assistance of U.S. federal courts under Section 1782. *See, e.g.*, *Bush v. Cardtronics, Inc.*, No. 4:20-CV-02642, 2020 WL 6261694, at *4 (S.D. Tex. Oct. 23, 2020) (agreeing that a Section 1782 applicant's argument that "Mexico has significant societal, political, commercial, and legal ties to the U.S. judicial system" weighed in favor of granting the application); *In re Application of Banco Mercantil de Norte*, 2023 WL 6690708, at *8 (observing the "Mexican courts' general receptivity to U.S. courts' assistance in discovery"); *Grupo Mex. Sab De CV*, No. 3:14-MC-00073, 2014 WL 12691097, at *3 (N.D.

Tex. Oct. 17, 2014) ("[T]here is no evidence to suggest that the Mexican court is hostile to U.S. federal courts' assistance under § 1782(a).").

### 3. Páramo's proof-gathering-restriction arguments are wrong

The third *Intel* factor also cuts against Páramo. This factor looks at whether the Section 1782 application tries to sidestep limits that a foreign or domestic jurisdiction places on discovery and proof-gathering. Páramo contends that the Banorte Parties are trying to circumvent foreign and domestic proof-gathering restrictions. (Dkt. No. 59 at 6–8). Not so.

#### a. Foreign proof-gathering restrictions

Broadly speaking, the third *Intel* factor asks whether a request "seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents." *In re Accent Delight Int'l Ltd.*, 791 F.App'x. 247, 251 (2d Cir. 2019) (emphasis in original). That said, Section 1782 "contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding," *Intel*, 542 U.S. at 247, 124 S.Ct. at 2473, and "district courts should not outright deny discovery under § 1782 'solely because such discovery is unavailable in the foreign country,'" *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-01559, 2017 WL 3780213, at *10 (N.D. Tex. Aug. 31, 2017) (quoting *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015)).

Páramo argues that the Banorte Parties' "real purpose" in seeking the information is to use it in criminal proceedings against Cartograf and Páramo in Mexico.[3] (Dkt. No.

[3] One of the Banorte Parties, Arrendadora y Factor Banorte, S.A. de C.V., Sociedad Financiera de Objeto Múltiple, Grupo Financiero Banorte, filed a criminal complaint against (continue)

59 at 13). Páramo thus contends that the Banorte Parties' Section 1782 application is an effort to avoid the proof-gathering process of the Mutual Legal Assistance Treaty ("MLAT") between the U.S. and Mexico, an agreement that allows for the exchange of evidence in criminal matters. (*Id.* at 7–8, 13). The Court disagrees.

First, in the original application, counsel for the Banorte Parties submitted a declaration that the information sought "is likely admissible in the Mexican Proceedings," (Dkt. 1-2 at 8), and that declaration primarily discusses civil enforcement proceedings, (*see id.* at 4–6).

Second, a federal court in the Eastern District of Virginia "categorically rejected" a nearly identical argument made by Páramo's company, Cartograf USA in *In re Application of Banco Mercantil De Norte, S.A.*, 2023 WL 6690708, at *8–11. Cartograf USA asserted that because its corporate "parent" was under investigation in Mexico, the subsidiary could not be ordered to produce documents for use in civil proceedings without the involvement of Mexican prosecuting authorities under the MLAT. *See* Cartograf U.S.A., Inc.'s Memorandum in Support of its Motion to Quash at 12–13, *In re Application of Banco Mercantil De Norte, S.A.*, No. 3:23-MC-00008, 2023 WL 6690708, ECF No. 17. The Virginia court rejected that argument, finding that the evidence was sought for use in civil proceedings, not criminal, and noting that the MLAT process is unavailable to private parties in a civil case. *In re Application of Banco Mercantil De Norte, S.A.*, 2023 WL 6690708, at *8–11. The Virginia court considered the same cases Páramo cites in his Motion but

---

Cartograf and Páramo. (Dkt. No. 1-2 at 6). At the time of the Section 1782 application, the matter was "pending and being investigated by the relevant authorities in Mexico." (*Id.*).

found them inapposite because they dealt with requests made by foreign prosecutors for use in criminal investigations, not requests by private parties for use in civil proceedings. *See id*. at *9.

The Virginia court's reasoning is persuasive. Páramo contends that "Banorte has not explained why 'the MLAT review procedure would not benefit its quest for the information it seeks.'" (Dkt. No. 59 at 13) (quoting *In re Application of Republic of Turkey*, No. 2:20-MC-00036, 2021 WL 671518, at *12 (S.D. Ohio Feb. 22, 2021)). But as private parties in a civil case, the Banorte Parties cannot use the MLAT procedure. *See In re Application of Banco Mercantil De Norte, S.A.*, 2023 WL 6690708, at *9 ("[P]rivate parties cannot rely on MLATs, which are only available for criminal law enforcement authorities.").

Páramo also argues that the Banorte Parties' application would circumvent "Mexican laws against self-incrimination." (Dkt. No. 59 at 16). However, Páramo's counsel could not even identify the applicable provisions of the Mexican Constitution at the September 5 hearing. (Dkt. No. 64 at 72). Páramo has since provided a declaration from a Mexican attorney outlining various self-incrimination protections under Mexican law and the Mexican Constitution. (Dkt. No. 73-1). But beyond describing in broad terms what these restrictions are, the declaration does not explain why or how they apply to this case. (*See id.*). In fact, the declaration does not even say that the restrictions it describes actually apply in this case or that any of the documents the Banorte Parties seek are protected. (*See id.*). Nor does Páramo bridge this gap in his Reply. (*See* Dkt. No. 73).

By contrast, the Banorte Parties have submitted a Declaration from a Mexican attorney stating:

> If a U.S. Federal District Court, with jurisdiction over Páramo as a U.S. resident, were to order Páramo to produce the requested documents, it is my belief that said evidence would likely be admissible in the Mexican civil proceedings and would not be excluded as evidence due to the Mexican right against self-incrimination.

(Dkt. No. 71 at 9–10). Accordingly, the Court finds that the Banorte Parties are not seeking information from Páramo to circumvent foreign proof-gathering restrictions.

b. Domestic proof-gathering restrictions

Páramo next argues that the unfiled state-court petition evidences the Banorte Parties' attempts to circumvent domestic proof-gathering restrictions. (Dkt. No. 59 at 10–11). This argument fails for two reasons.

First, the state-court petition has not been filed. (Dkt. No. 64 at 16); (Dkt. No. 73 at 5). Instead, Páramo was only provided a courtesy copy of a petition that might be filed in the future. In both *Glock* and *In re Accent Delight*, the Section 1782 applicants were parties to *already-filed* lawsuits against the Section 1782 respondents. *See Glock*, 797 F.3d at 1005 (describing the applicant's subsequent RICO lawsuit against the respondent); *In re Accent Delight*, 869 F.3d at 124–25 (describing the applicant's parallel lawsuits against the respondent). That is not the case here.

Second, the timing of the threatened state-court litigation does not support Páramo's theory that the Banorte Parties used the Section 1782 application as a stalking horse for domestic litigation. The Banorte Parties considered filing a state-court lawsuit

*more than a year* after their initial Section 1782 application in July 2023. (*See* Dkt. 59-1); (Dkt. No. 1).

**4. The request is not unduly burdensome**

Finally, the request is not unduly burdensome. Páramo makes two main arguments on this factor: (1) the request is too broad; and (2) translating all the requested Spanish-language documents is too burdensome. (Dkt. No. 59 at 8–9). Both arguments fail.

While a request must not be "unduly" burdensome, *Intel*, 542 U.S. at 265, 124 S.Ct. at 2483, the burden is not undue if a party's evasive answers and refusal to cooperate necessitates a broad discovery request. *Cf. In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-CV-00088, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) ("McKinsey's tactical approach to the requested discovery is hardly the type of burden that could weigh in favor of blanket nonproduction.").

Here, the Banorte Parties' request is not overly broad when considered alongside the fact that Páramo fled the jurisdiction, concealed information at every step, and allegedly continues to dissipate assets. Indeed, as the Virginia court found: "[T]he Banorte Parties' allegation that Páramo has not cooperated with the ongoing Mexican proceedings and has 'absconded from the jurisdiction of the Mexican courts,' (Opp. at 9), creates at least some doubt that the Banorte Parties 'can obtain the information from [Páramo] without imposing a burden'" on him. *In re Application of Banco Mercantil de Norte*, 2023 WL 6690708, at *12 (quoting *In re Elliott Assocs. L.P.*, No. 3:21-MC-00160, 2022 WL 1159692, at *4 (W.D.N.C. Apr. 19, 2022)).

One of the "'twin aims'" of Section 1782 is "'to provide efficient means of assistance to participants in international litigation in our federal courts.'" *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553–54 (5th Cir. 2012) (quoting *In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001), *abrogated on other grounds by Intel*, 542 U.S. 241, 124 S.Ct. 2466). But here, Páramo has resisted every effort to make the discovery process "efficient." As a result, the Banorte Parties lack the information needed to tailor their request beyond what they have sought.

Second, Páramo argues that "nearly every document" is in Spanish and translating them "into English from Spanish for review before being produced" is unduly burdensome. (Dkt. No. 59 at 14–15). Páramo's briefing, however, does not explain why he would need to translate the documents into English. Páramo—as a Mexican citizen—has not alleged he cannot read the documents as they currently exist, and the Banorte Parties have not asked Páramo to translate them into English. *See In re Fialuridine (FIAU) Prods. Liab. Litig.*, 163 F.R.D. 386, 388 (D.D.C. 1995) (rejecting an argument that production of foreign-language documents posed an undue burden due to the need for translation because plaintiff had not sought the translation of documents).

If Páramo decides to translate documents out of his native language so that they can be reviewed by lawyers who do not speak Spanish before being used in Spanish-language proceedings, that "matter of choice" does not create an undue burden. As one court explained:

> Section 1782 applications, which presuppose that the discovered material will be used in connection with foreign litigation, may often involve requests for material in a foreign

> language. Such language differences are inevitable, and may carry added expense for both parties. But these additional burdens are not "undue," and cannot be used as a shield where, as here, the decision to translate and review the documents in the United States is a matter of choice.

*See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8 Accordingly, this fourth *Intel* factor favors denying the Superseding Motion to Quash.[4]

### C. PÁRAMO'S OTHER ARGUMENTS

Apart from the statutory elements and discretionary factors, Páramo makes three additional arguments: (1) the subpoena seeks information from Mexico, (Dkt. No. 59 at 5); (2) the subpoena is unduly burdensome under Rule 45, (*id.* at 14–15); and (3) the subpoena seeks information protected by the Fifth Amendment of the United States Constitution and Mexican laws against self-incrimination, (*id.* at 15–16). Each argument lacks merit.

#### 1. Information from Abroad

Páramo first contends that "there are obvious difficulties and unresolved legal questions about whether the Section 1782 process can be used to compel a domestic person to produce foreign information for a foreign proceeding." (*Id.* 59 at 5) (citing *Grupo Mex. SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573, 576 (5th Cir. 2016)). That may or may not be true; regardless, the Court is not ordering Páramo to produce "foreign information."

---

[4] The Court also conducts an undue-burden analysis under Rule 45 below. *See infra* III.C(2). That discussion applies with equal force to the fourth *Intel* factor.

Páramo gains nothing from the Fifth Circuit's discussion in *Grupo Mexico*. There, the Fifth Circuit was "mindful that interesting issues might have been considered," including whether Section 1782 "ever authorize[s] federal district courts to order discovery from outside the United States in order to assist parties in litigation pending in foreign tribunals?" 821 F.3d at 576. But it expressly "decline[d] to address these issues." *Id.*

The Section 1782 application did not request—and the Court has not ordered—the production of documents located in Mexico. The Banorte Parties' Section 1782 application requested documents in Páramo's "possession, custody, or control." (Dkt. No. 1-4 at 4). And according to a declaration attached to the Banorte Parties' Response, "All of the information that was requested through the Subpoena is expected to be in Páramo's personal possession, custody, or control, and expected to be accessible to him either in paper or digital form from his current residence in Texas." (Dkt. No. 71 at 8).

At the September 5 hearing, Páramo's counsel contended that Páramo's emails and other electronic documents were "in Mexico." (Dkt. No. 64 at 51, 53, 57–58). Courts in this circuit and elsewhere have flatly rejected that argument, which is nonsensical. *See In re Application of Oasis Focus Fund LP*, No. 1:23-CV-00239, 2023 WL 6278882, at *3 (W.D. Tex. Sept. 26, 2023) ("The undersigned agrees with Petitioners that this distinction means little in light of the fact that the responsive documents are stored electronically and are just as easily accessed here in the United States as they would be anywhere else."), *report and recommendation adopted*, 2023 WL 7238594 (W.D. Tex. Nov. 2, 2023); *cf. Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("At bottom, we agree with the

District Court that the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a per se bar to discovery under § 1782.") (emphasis in original).[5] After all, "[t]he cloud is not in Mexico." (Dkt. No. 64 at 58).

**2. <u>Rule 45</u>**

Páramo also argues that the subpoena is unduly burdensome under Rule 45. (*See* Dkt. No. 59 at 14–15); Fed. R. Civ. P. 45(d)(1). The Court disagrees.

Páramo has the burden of showing that compliance with the subpoena would be unreasonable and oppressive. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Whether a subpoena is unduly burdensome is determined by the facts of each case and the need for the documents in question. *Id.* Courts in the Fifth Circuit look at six factors to determine whether a subpoena is unduly burdensome: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.*

"The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering

[5] These courts also rejected any per se extraterritoriality limit on Section 1782. *See In re Application of Oasis Focus Fund LP*, 2023 WL 6278882, at *3; *Sergeeva*, 834 F.3d at 1200; *see also In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) ("[W]e join the Eleventh Circuit in holding that a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad."). For its part, the Fifth Circuit has not answered "the difficult legal question about extraterritoriality" as to Section 1782. *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968, 973 (5th Cir. 2020). The Court need not weigh on that issue because requiring Páramo to produce documents "accessible to him either in paper or digital form from his current residence in Texas," (Dkt. No. 71 at 8), does not apply Section 1782 extraterritorially.

evidence revealing the nature of the burden." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller v. City of Dal.*, 303 F.R.D. 466, 490 (N.D. Tex. 2014).

a. Relevance of the requested information

Though Páramo originally asserted that the requested documents "will not be relevant to [the Banorte Parties'] civil proceedings," (Dkt. No. 17 at 14), he removed this assertion in his Superseding Motion to Quash, (*see* Dkt. No. 59 at 15).

The Banorte Parties, meanwhile, have produced the declaration of a Mexican attorney involved in the Mexican litigation stating that "[t]he documents sought are crucial in order to identify the property, funds, and debts that are the subject of the ongoing civil proceedings in Mexico." (Dkt. No. 71 at 7). The declarant also explains:

> Based on the information that has been uncovered so far, the Banorte Parties believe that these communications will show that Páramo instructed his companies and their clients to redirect these receivables so that they would not be paid to the Banorte Parties and would instead be transferred to other entities under Páramo's ultimate control to be used for fraudulent purposes.

(*Id.* at 8).

This factor favors denying the Superseding Motion to Quash.

b. Need of the party for the documents

Páramo argues that the Banorte Parties have "not demonstrated a need for the ocean-sized swath of documents requested." (Dkt. No. 59 at 14). This statement inverts the burden at this stage, and notwithstanding, Páramo offers no evidence for this bald

assertion and nothing to refute the Banorte Parties' claim that they need these documents to identify Páramo's assets and to enforce the Mexican court's freezing orders. (Dkt. No. 71 at 7–9). Páramo also fails to explain how the Banorte Parties could accomplish these ends without the requested discovery.

This factor thus favors denying the Superseding Motion to Quash.

c. The breadth of the document request

Páramo argues that the Banorte Parties have requested an "ocean-sized swath of documents" and that "the [subpoena's] breadth intentionally encompasses documents unrelated to the request." (Dkt. No. 59 at 15). The Court disagrees.

First, Páramo offers no evidence for these assertions, despite the Court's explicit requests at the September 5 hearing for corroborating evidence. (Dkt. No. 64 at 27, 63, 73). Indeed, nothing in the record suggests that neither Páramo nor his counsel have made any meaningful efforts to assess the scope of responsive documents.

Second, Páramo emphasizes that for five of the six categories of requested documents, the Banorte Parties request "[a]ny and all documents" that fall within the requested category. (Dkt. No. 59 at 14). For example, Páramo complains that the "production [of] 'any and all documents' between Mr. Páramo and his employees"—the first requested category—"would be an enormous undertaking that could encompass hundreds of thousands of documents." (*Id.*). Páramo fails to mention that the subpoena served on him was limited to documents in Páramo's "possession, custody, or control." (Dkt. No. 16 at 6). If Páramo's "control" extends to documents possessed by his "directors, officers, agents, employees, representatives, subsidiaries, managing agents,

affiliates, [or] investigators," then Páramo must produce those documents. (*Id.*). But Páramo has offered nothing to substantiate his claim that he has an "ocean-sized swath" of responsive documents in his "possession, custody, or control." (Dkt. No. 59 at 15).

The Court finds that this factor favors denying the Superseding Motion to Quash.

d. <u>The time period covered by the request</u>

Páramo contends that the time period is a "confoundingly large six years." (*Id.* at 15). But as the Banorte Parties explain: "This period starts from when Páramo entered his first financing agreements with Applicants, receiving funds which he is believed to have subsequently pocketed and concealed by shuffling them to other entities, as described in the attached declaration of Mexican counsel . . . ." (Dkt. No. 70 at 14–15). The attached declaration of Mexican counsel describes exactly that. (*See* Dkt. No. 71 at 7) ("The documents were sought from the period of September 1, 2018, to present, representing the period beginning with the execution of the first financing agreement with Cartograf and Páramo and his initial receipt of funds that were ultimately stolen.").

Further, Páramo does not suggest a reasonable alternative—a time period that would ease the burden on Páramo but ensure that the Banorte Parties obtain the documents they need.

This factor thus favors denying the Superseding Motion to Quash.

e. <u>The particularity with which the party describes the requested documents</u>

Páramo argues that "there is no particularity in any of the requests to target specific events or transactions." (Dkt. No. 59 at 15). But as the Court previously

explained, *see supra* Section III.B.4, Páramo's evasive and obstructive tactics throughout this proceeding have kept the Banorte Parties from tailoring their requests. Páramo offered the same boilerplate objections to all six categories of requested documents. (*See* Dkt. No. 25–1 at 35–39). And he has not created or attempted to create a privilege log or anything else that would allow the Banorte Parties to understand how his objections relate to specific documents. In fact, counsel for Páramo stated that he has not even reviewed the documents that might be responsive to these requests. (Dkt. No. 64 at 46, 57–58).

This factor thus favors denying the Superseding Motion to Quash.

f. The burden imposed

Finally, Páramo contends that "the burden in identifying, translating and reviewing the documents requested would be immense." (Dkt. No. 59 at 15). Here again, Páramo offers no evidence to support this assertion. The record lacks any evidence showing how much time, effort, or money it would cost Páramo to comply with the subpoena.

This factor thus favors denying the Superseding Motion to Quash.

* * *

The Court finds that all six factors of the undue-burden analysis favor denying the Superseding Motion to Quash. As a result, the Court finds that Páramo has failed to establish that the requests are an undue burden.

3. **<u>Fifth Amendment and Self Incrimination</u>**

Finally, Páramo briefly re-urges his position that the subpoena seeks information protected by the Fifth Amendment of the Constitution as well as Mexican laws against self-incrimination. (*Id.* at 15–16). Unsurprisingly, the Banorte Parties disagree. (Dkt. No. 70 at 17–18). They argue that Páramo failed to satisfy his burden of proving the privilege because he merely made "blanket and boilerplate objections," "*still* has not cited to the provision of Mexican law that is the basis for his privilege claim, *still* has not produced a declaration of Mexican counsel substantiating his conclusory assertion that the documents are protected, and *still* has not produced any privilege log." (*Id.* at 18) (emphasis in original). Páramo replied and provided a declaration from counsel from Mexico identifying the self-incrimination privilege they want to assert. (Dkt. No. 73-1 at 113–16).

Based on this record, the Court finds that the Páramo's privilege assertions lack merit for two reasons. First, Páramo's assertion was untimely. The Fifth Amendment "is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion." *Maness v. Meyers*, 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975). "[T]he privilege may not be relied upon unless it is invoked in a timely fashion." *Roberts v. United States*, 445 U.S. 552, 559, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980). And according to Páramo's own authority, (*see* Dkt. No. 44 at 6), waiver is a matter left to the trial court's discretion, *In re DG Acquisition Corp.*, 151 F.3d 75, 82 (2d Cir. 1998) ("[T]he bankruptcy court possessed the discretion to look at all the circumstances and determine the appropriate penalty, if any, for the [parties'] untimeliness."). Even so, courts are more

hesitant to find a waiver of Fifth Amendment rights than a waiver of other discovery objections. *See United States v. A & P Arora, Ltd.*, 46 F.3d 1152, 1995 WL 18276, at *1 (10th Cir. 1995); *see also Roland v. Landeros*, No. 9:21-CV-00254, 2023 WL 8591531, at *2 (E.D. Tex. Apr. 28, 2023) (finding waiver of "all grounds for objections asserted in Plaintiff's responses to the discovery requests *except* for those based on the Fifth Amendment" (emphasis in original)).

Here, Páramo waited *four months* to lodge any Fifth Amendment or self-incrimination objection to the subpoena at issue and objected to producing *any* documents. Even worse, Páramo waited these four months to invoke the self-incrimination objections *without having even seen or reviewed the requested documents*. (Dkt. No. 64 at 46, 57–58). While this Court shares the hesitancy expressed by other courts to find a waiver of Fifth Amendment rights, under these facts, the Court concludes that Páramo's four-month delay waived the objection.

Second, even if Páramo's Fifth Amendment assertion had been timely, it would still have been insufficient. Objections must not only be timely; they must be specific. "[A] party must selectively invoke the privilege against self-incrimination and 'object with specificity to the information sought from him.'" *SEC v. Kiselak Cap. Grp., LLC*, No. 4:09-CV-00256, 2011 WL 4398443, at *5 (N.D. Tex. Sept. 20, 2011) (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981)). This specificity "permits the district court to rule on the validity of his claim of privilege" and "conduct[] 'a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks

to explore, whether or not the privilege is well-founded.'" *First Fin. Grp. of Tex.*, 659 F.2d at 668 (quoting *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976)).

Páramo's objections were anything but specific; instead, they amounted to boilerplate objections to producing any documents. The objections included a blanket invocation of Páramo's self-incrimination rights under the Fifth Amendment and the allegedly corresponding "Mexican right against self-incrimination." (*See* Dkt. No. 25-1 at 34–39). And while Páramo eventually provided this Court with a declaration identifying the Mexican self-incrimination privilege Páramo invoked, (Dkt. No. 73-1 at 113–16), that declaration fails to explain what documents the privilege covers and how or why it even applies here. The Court finds that the failure to timely assert the privilege, the blanket boilerplate objection to producing any documents without having reviewed those documents, and the failure to produce a privilege log constitute a separate and independent basis for overruling the objection.

## IV. CONCLUSION

For the above reasons, Respondent Juan Jose Páramo's Motion Opposing § 1782 Application and Motion to Quash Banorte Subpoena, (Dkt. No. 17), and Superseding Motion to Quash § 1782 Application, (Dkt. No. 59), are **DENIED**.

It is SO ORDERED.

Signed on November 27, 2024.

Drew B. Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**